IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JEREMY KING, | ) | CV. NO. 05-00666 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HOLO HOLO CHARTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S COUNTER-MOTION
<u>FOR SUMMARY JUDGMENT</u>

On April 30, 2007, the Court heard Plaintiff's Motion for Summary Judgment and Defendant's Counter-Motion for Summary Judgment.  John R. Hillsman, Esq., appeared at the hearing on behalf of Plaintiff; Michael J. Nakano, Esq., appeared at the hearing on behalf of Defendant.  After reviewing the motions and the supporting and opposing memoranda, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Counter-Motion for Summary Judgment.

<u>BACKGROUND</u>

Defendant Holo Holo Charters, Inc. ("Defendant" or "Holo Holo") operates tour boats out of Port Allen, Kauai and offers a few trips a day.  Plaintiff

has been employed by Defendant as a seaman under the Jones Act.  None of Defendant's employees, including Plaintiff, live aboard any of the Defendant's vessels.  Defendant does not operate any overnight trips.  Crew members work a maximum of two trips per day.  Once crew members complete their trip, they are not subject to recall or further duty that day.  Crew members are not on-call and have no obligation to work unscheduled trips or hours.  Crew members are not paid for travel time between their homes and Port Allen.

On January 29, 2004, Plaintiff drove his own car to work and parked it in the same lot as Defendant's Fuel Truck.  Plaintiff served as a crew member on a sunset cruise aboard Defendant's vessel that day.  The cruise left Port Allen at approximately 2:30 p.m. and returned several hours later.  After the vessel had returned and was refueled, Plaintiff drove the Fuel Truck to the parking lot located less than a quarter mile up Waialo Road.  The Fuel Truck was a Ford F350 pickup that carried a fuel tank of approximately 200 gallons.

Instead of leaving the Fuel Truck in the parking lot, Plaintiff drove it into Hanapepe Town to the home of another Holo Holo employee, Mike Rogers.  Employee Lisa Daisey accompanied Plaintiff.  Plaintiff and Daisey visited with Rogers for approximately ten minutes.  Plaintiff and Daisey left Rogers' home and drove to the home of another Holo Holo employee, Kapena Wilson.  To get to

Wilson's home, Plaintiff had to drive further away from the Fuel Truck parking lot. Wilson got into the truck with Plaintiff and Daisey. Plaintiff drove in the direction of Salt Pond Park. At approximately 10:30 p.m., Plaintiff turned away from the direction of Salt Pond Park, at which point the Fuel Truck overturned. Plaintiff had driven approximately 2 miles from Port Allen before getting into the accident. The accident occurred after regular working hours. Plaintiff was not running errands for Defendant at the time of the accident, and was not performing any work for Defendant or acting at the direction of Defendant.

Plaintiff did not ask for or receive permission from any supervisor to take the Fuel Truck, he did not advise any supervisor that he was taking the truck, and he was not directed to the take the Fuel Truck. Defendant claims that employees were not permitted to use the Fuel Truck for personal reasons. At the time of the accident, Defendant had in place an employee code of conduct that prohibited unauthorized use of company equipment. However, there were no written policies or rules specifically prohibiting use of the Fuel Truck for personal reasons, or requiring employees to get permission to use the truck. Other employees had an implicit understanding that the Fuel Truck was not to be used for personal business. Prior to the accident, Plaintiff had never taken the Fuel Truck

for a ride after work or on his days off, but occasionally he used the truck to go to lunch.

Plaintiff suffered spinal, rib, lung, and dental injuries from the accident.  Plaintiff was allegedly disabled from January 30, 2004, through May 29, 2004, and unable to work.  Plaintiff allegedly incurred $172,977.67 in medical bills for the treatment of his injuries.  Neither Plaintiff, Defendant, nor HMAA, Plaintiff's private healthcare carrier, have paid these bills.  HMAA allegedly refused to pay the bills on the basis that the injury was work related.  Defendant refuses to pay the medical bills on the basis that the injury occurred outside of work, during a personal frolic.  Plaintiff's healthcare providers have sent his medical bills to collection.

On December 11, 2006, Plaintiff filed a motion to compel maintenance and cure, arguing that since he was employed as a seaman and injured, allegedly in the service of a vessel, Defendant should be compelled to pay maintenance and cure.  On February 6, 2007, the magistrate judge denied Plaintiff's motion to compel finding that the motion appeared to be dispositive on the issue of Plaintiff's entitlement to payment, if any, for maintenance and cure for the personal injuries that are the subject of the lawsuit.

On February 9, 2007, Plaintiff filed the instant motion for summary judgment. On April 12, 2007, Defendant filed its counter-motion for summary judgment. On April 19, 2007, Plaintiff filed an opposition to Defendant's counter-motion. On April 23, 2007, Defendant filed a reply in support of its counter-motion.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. California Dept. of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial–usually, but not always, the defendant–has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence

that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

Plaintiff argues that this Court should apply an alternative standard of review.  Plaintiff asserts that this alternative standard is appropriate where the seaman is the moving party, because the summary judgment standard of resolving doubts in favor of the non-moving party does not comport with the Supreme Court's direction to defer to seamen in determining maintenance and cure questions. See Conners v. Iqueque, No. C05-334, 2005 WL 2206922, at * 2 (W.D. Wash. Aug. 25, 2005) (drawing all inferences in the light most favorable to the

non-moving party "squares awkwardly with the Supreme Court's instructions to defer to seamen in determining maintenance and cure questions.") (citing Vaughan v. Atkinson, 369 U.S. 527 (1962) and Aguilar v. Standard Oil Co., 318 U.S. 724 (1942)).

> In Conners, the district court found that
>
> the Supreme Court's instructions to construe claims for maintenance and cure liberally in favor of seamen counsel against applying the rigid standards of Rule 56 to a pretrial motion to compel maintenance and cure. In exercising its admiralty jurisdiction, the court is empowered to take a "flexible" approach.  The court acknowledges the tension between a seaman's claim to payments for medical attention and living expenses and a shipowner's concern that if it ultimately proves that the seaman is not entitled to maintenance and cure, it may be left with little realistic opportunity to recover the payments.  Nonetheless, the court must resolve that tension in favor of the seaman.

Id. (citation omitted).

Here, however, Defendant filed a counter-motion for summary judgment.  That motion is clearly dispositive and thus, the summary judgment standard is the appropriate standard to apply to that motion.  See Brooks v. Raymond Dugat Co. L C, 336 F.3d 360, 363 (5th Cir. 2003) (noting that "if a finding has been made that the plaintiff is not due maintenance and cure, then claim preclusion would bar all subsequent claims for maintenance and cure.").

8

Because the counter-motion was filed, this Court will construe all inferences in the light most favorable to Plaintiff, as the nonmoving party of that motion, thereby avoiding any tension between the summary judgment standard and the direction to defer to seaman on issues of maintenance and cure.

## DISCUSSION

The issue that this Court must determine is whether, as a matter of law, a commuter seaman[1] is entitled to maintenance and cure when he is injured in a car accident while driving a company vehicle, during non-working hours, on personal business. Plaintiff asserts that he is entitled to maintenance and cure because his injuries occurred between the beginning and ending dates of his engagement and were not due to misbehavior. Defendant claims that Plaintiff is not entitled to maintenance and cure because he was not in service of the vessel at the time of the accident and he was engaged in willful misconduct.

When a seaman is injured in the service of a vessel, the shipowner must pay maintenance and cure[2] even where the shipowner is not at fault. Aguilar,

---

[1] In general, a commuter seaman is one who lives ashore and commutes to work daily, whereas a bluewater seaman is one who lives aboard a ship and although he may go to shore for personal reasons, he is still on the call of duty.

[2] Maintenance is compensation for room and board equivalent to what the seaman would have received aboard the vessel. Cure represents payments for
(continued...)

9

318 U.S. at 730; Conners, 2005 WL 2206922 at *1. However, the law is clear that "a seaman cannot recover maintenance and cure unless his injury or sickness occurred in the service of the ship." Bencic v. Marine Traders, Inc., 255 F. Supp. 561, 563 (D.C. Del. 1966) (citing Farrell v. United States, 336 U.S. 511, 516 (1949)). Furthermore, "a seaman cannot recover for maintenance and cure if his injury was the result of his own wilful misconduct." Id. at 565.

Plaintiff bears the burden of establishing that he is entitled to maintenance and cure. Relying on Bencic, Plaintiff asserts that he meets this burden by proving a prima facie case that he was injured between the beginning and ending dates of his employment and that the burden then shifts to Defendant to rebut Plaintiff's prima facie showing by proving either that the injury occurred otherwise than in the service of the ship, or that it was caused solely by Plaintiff's willful misbehavior. See Bencic, 255 F. Supp. at 563-64 (finding that it can be logically argued "that a seaman makes out a prima facie case of such an injury if he establishes that it took place between the dates specified in the articles of agreement for reporting for duty and the termination of the engagement. When this has been proved, it seems reasonable to impose upon the respondent the burden of

---

²(...continued)
medical treatment necessary to restore the seaman to health.

rebutting the seaman's prima facie case by proving that despite the time of injury, it was incurred otherwise than in the service of the ship."). Defendant argues that the Bencic case does not apply because Plaintiff was a commuter seaman and not a bluewater seaman. Without deciding who has the burden and if that burden shifts, even if Plaintiff is correct that Defendant has the burden of proving that the injury occurred otherwise than in service of the ship, this Court finds that, as set forth below, Defendant has met that burden.

Courts have applied a liberal interpretation to "in the service of the ship." To be in the service of the ship, a seaman need be generally answerable to the call of duty, or in other words, in the course of employment. Farrell, 336 U.S. at 516 (1949) (the seaman "must, of course, at the time be 'in the service of the ship,' by which is meant that he must be generally answerable to its call to duty rather than actually in performance of routine tasks or specific orders."); Braen v. Pfeifer Oil Transp. Co., 361 U.S. 129, 131 (1959) (holding that the meaning of the term 'course of employment' under the Jones Act is the equivalent of 'the service of the ship' formula used in maintenance and cure cases). "In general, a seaman is acting in the course of his employment when he is doing the work of his employer pursuant to his employer's orders." Park v. Alakanuk Native Corp., A90-305 CIV, 1994 WL 780707, at *6 (D. Alaska March 16, 1994) (citing Braen, 361 U.S. at

133); Baker v. Ocean Sys., Inc., 454 F.2d 379, 384 (5th Cir. 1972) ("it is clear as a matter of law that the seaman's answerability to the "call to duty" imports at the very least some binding obligations on the part of the seaman to serve.").

Several courts have found a seaman to be in service of a ship even when the seaman is recreating ashore. Aguilar, 318 U.S. at 731-32 (finding that seaman on shore leave in a foreign port who was injured in a dance hall was in the service of the ship); Warren v. United States, 340 U.S. 523, 530 (1951) (the maintenance and cure obligation is equally applicable to injuries actually received on land "during the period of relaxation while on shore as it is to those received while reaching it."); Ellis v. Am. Hawaiian S.S. Co., 165 F.2d 999, 1001 (9th Cir. 1948) (finding that the seaman's injury suffered from diving into swimming pool occurred in the course of employment since the seaman was on shore leave in a foreign port). Those seamen are found to be in the course of employment, even when clearly engaging in personal matters while off-the-clock, because ultimately the ship's interests are considered to be advanced by such recreation. Specifically, as noted by the Supreme Court "[u]nlike men employed in service on land, the seaman, when he finishes his day's work, is neither relieved of obligations to his employer nor wholly free to dispose of his leisure as he sees fit." Aguilar, 318 U.S. at 731-32. Thus,

> [r]elaxation beyond the confines of the ship is necessary if the work is to go on, more so that it may move smoothly. . . . In short, shore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion. The voyage creates not only the need for relaxation ashore, but the necessity that it be satisfied in distant and unfamiliar ports. . . . In sum, it is the ship's business which subjects the seaman to the risks attending hours of relaxation in strange surroundings. Accordingly it is but reasonable that the business extend the same protections against injury from them as it gives for other risks of the employment.

Id. at 733-34.

Here, however, unlike the bluewater seaman in Aguilar, Plaintiff did not live aboard the vessel for any period of time. Neither was Plaintiff on "shore leave" or in a foreign port at the time of the accident. Indeed, Plaintiff reported to work on a daily basis for voyages of only a few hours and returned daily to the shore. At the time of the accident at issue in this case, Plaintiff admits he was off-the-clock. Plaintiff was free to engage in personal activities and was not on-call for duty or expected to be called for duty. Further, Plaintiff was not running errands for Defendant or acting at the direction of Defendant. Although Plaintiff was driving Defendant's vehicle, he has not asserted how he was serving the ship's interests at the time of the accident.

13

In support of his claim, Plaintiff cites several cases where courts found that the employer was obligated to pay maintenance and cure where the seaman was injured onshore in a car accident.  See Vincent v. Harvey Well Serv., 441 F.2d 146 (5th Cir. 1971); Magnolia Towing Co. v. Pace, 378 F.2d 12 (5th Cir. 1967); Williamson v. W. Pac. Dredging Corp., 441 F.2d 65 (9th Cir. 1971); . These cases are distinguishable from the instant case, however, because in those cases, the employer provided transportation or compensation for the commute to and from work.  See Vincent, 441 F.2d at 147 (seaman was allowed to recover for injuries received while riding as a passenger in an automobile since the car was furnished by the employer and driven by a fellow employee who was paid for transporting off-duty employees from the pierhead to a convenient metropolitan assembly point 50 miles away); Magnolia Towing Co., 378 F.2d at 13 (the court found that the employee was a seaman and entitled to recover for injuries sustained in a car accident since the employer had ordered the seaman to come to work and sent another employee in a company car to transport the seaman part of the way to the job site); Williamson, 441 F.2d at 66 ("maintenance and cure rested upon the district court's finding, supported by the record, that commuting was part of the job plaintiff's decedent was employed to perform . . . .").

14

Where the employer does not provide the transportation or pay for the commute to and from work, courts have found that a seaman injured in a car accident during his commute is not entitled to maintenance and cure. See Sellers v. Dixilyn Corp., 433 F.2d 446, 448 (5th Cir. 1970) (a seaman who was injured in an automobile accident while going from work to his home at the start of his off period was not entitled to maintenance and cure since his off-duty time was his own to spend as he pleased); see also Daughdrill v. Diamond M. Drilling Co., 447 F.2d 781, 784 (5th Cir. 1971) (reversing a judgment in favor of the survivors of a seaman who was killed while going from his home to work since the seaman was free do to as he pleased during his time off, was not expected to report to work if called while off duty, was not on shore leave, was responsible for his own transportation from dock to home, and was not paid for days off or for travel time).

Here, it is undisputed that Defendant neither provided transportation to or from work or paid employees for their travel time. Indeed, Plaintiff had driven his own car to work that day and admitted that he had never before used the Fuel Truck to get home after work. Additionally, it is undisputed that Plaintiff was not being compensated for his time at the time of the accident, and he was off-the-clock. Moreover, Plaintiff was not commuting to or from work at the time of the accident. The only connection at all to his employment at the time of the accident

15

was that Plaintiff was driving a vehicle owned by Defendant. This is insufficient, as a matter of law, to establish that Plaintiff was acting in the course of his employment or in the service of the ship.[3]

Plaintiff also argues that the Fuel Truck was jerry-rigged to carry the fuel tank in violation of the federal regulations governing the transportation of hazardous materials. Plaintiff asserts that his allegation that the Fuel Truck was not maintained in accordance with federal regulations entitles him to maintenance and cure. Even if Plaintiff's assertion were correct, however, Plaintiff presented no evidence or argument explaining how the Fuel Truck violated federal regulations. Accordingly, Plaintiff's argument lacks merit.

Therefore, as Plaintiff was not acting in service of the ship at the time of accident, he is not entitled to maintenance and cure.

---

[3]Because this Court finds that Plaintiff was not acting in the service of the ship at the time of the accident, it need not consider whether Plaintiff's actions constitute willful misconduct.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Counter-Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 10, 2007.



_____
David Alan Ezra
United States District Judge

King v. Holo Holo Charters, CV No. 05-00666 DAE-KSC; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S COUNTER-MOTION FOR SUMMARY JUDGMENT